1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

PAMELA E. SMITH,

            Plaintiff,

   v.

PRIDE MOBILITY PRODUCTS
CORPORATION,

         Defendant.

Case No. 16-CV-04411-LHK

**ORDER GRANTING DEFENDANT'S
MOTION TO DISMISS**

Re: Dkt. No. 4

Plaintiff Pamela Smith ("Plaintiff") sues Defendant Pride Mobility Products Corporation ("Defendant") for state-law disability discrimination, violations of federal and state manufacturing laws, and strict products liability. ECF No. 1-1 ("Compl."). Before the Court is Defendant's motion to dismiss. ECF No. 4 ("Def. Mot."). Having considered the submissions of the parties, the relevant law, and the record in this case, the Court hereby GRANTS Defendant's motion to dismiss.

**I. BACKGROUND**

     **A. Factual Background**

Plaintiff, a California citizen, suffers from arthritis and is disabled. Compl. ¶¶ 1, 8–9.

1

Plaintiff uses a wheelchair and a wheelchair lift in order to avoid walking and bending over.  *Id.* ¶¶ 9–10.  Defendant is a Pennsylvania corporation that manufactures wheelchairs and wheelchair lifts.  *Id.* ¶ 2.  In 2014, Plaintiff purchased both a travel wheelchair and a wheelchair lift manufactured by Defendant.  *Id.* ¶¶ 2, 11, 22.  Plaintiff's claims arise out of her use of these two products.

Plaintiff purchased a wheelchair lift ("the lift") from Defendant in June 2014; Plaintiff had the lift installed in her minivan. *Id.* ¶ 11–12.  The lift's control is located on a coiled cord, "which was designed to be hung up on the upright portion of The Lift, which goes into the car behind the wheelchair." *Id.* ¶ 14.  According to Plaintiff, "[w]hen the control is in the place designed for it, Plaintiff could not reach the control." *Id.*  Although "Plaintiff was able to use a pocket in the side of her van" to place the control, other users could not reach the control when the control was in the van pocket, "especially when putting the wheelchair back into the car." *Id.*  Plaintiff states that if she let go of the control, it "went zipping into the back of the car, leaving [Plaintiff] stuck without a way to get her wheelchair in or out of the car." *Id.* ¶ 15.

In addition to the location of the control, Plaintiff alleges several other problems with the lift.  Specifically, the lift's platform "is designed in such a fashion that unless the wheelchair is positioned exactly, the wheelchair tilts as Plaintiff sits in it before driving the wheelchair off The Lift." *Id.* ¶ 16.  According to Plaintiff, "it is very painful, difficult, and frightening for Plaintiff to attempt to drive the wheelchair off The Lift without sitting in it first." *Id.* ¶ 16.  Plaintiff also states that the "tie down for The Lift broke almost every time Plaintiff used it," *id.* ¶ 17; that the wheelchair can slide on the platform as the car is driving, even if the wheelchair is properly secured, *id.* ¶ 18; that the lift "squeaks badly," *id.* ¶ 19; and that "[t]he Lift jacks the van upwards if The Lift is not turned off at the exactly correct position," *id.* ¶ 20.

In July 2014, Plaintiff purchased a "Go Go Elite Traveler Plus" wheelchair ("the wheelchair"), which was also manufactured by Defendant.  *Id.* ¶ 22.  Plaintiff states that on September 13, 2014, Plaintiff used the wheelchair while attending a Renaissance Faire in Santa Clara County.  *Id.* ¶¶ 23–25.  A battery indicator on the wheelchair shows green, yellow, and red

2

lights to indicate the remaining battery power. *Id.* ¶ 26. According to Plaintiff, she checked the remaining battery power prior to ascending a hill, and "[t]he battery indicator was only down two out of six greens." *Id.* Plaintiff accordingly decided to ascend the hill. *Id.* Plaintiff states that "[a]fter about 20 feet the battery indicator moved to red, and the wheelchair stopped." *Id.* ¶ 27. Plaintiff then "decided to do a three point turn so that she could go forward down the hill." *Id.* However, "[w]hen Plaintiff put The Wheelchair into reverse, The Wheelchair started rolling, freewheeling down the hill at an angle to the hill." *Id.* ¶ 28. The wheelchair hit a bale of hay and tossed Plaintiff to the ground. *Id.* Plaintiff "injured her neck and her knee" and suffered "a permanently disabled dislocated big right toe." *Id.* ¶ 30. Plaintiff also alleges that she suffered from whiplash for two years following the accident and that she has suffered psychological damage and emotional distress. *Id.* ¶¶ 31–34. Plaintiff estimates that she has lost $60,000 in revenue since being injured. *Id.* ¶¶ 34. She now also faces difficulty and additional expenses while traveling because she no longer uses the wheelchair manufactured by Defendant, and she has not purchased a different travel wheelchair. *Id.* ¶¶ 33–35.

### B. Procedural History

Plaintiff filed suit against Defendant on June 24, 2016 in California state court. *See id.* Plaintiff's complaint alleged the following seven causes of action:

Count One of Plaintiff's complaint alleges that Defendant violated the Unruh Civil Rights Act ("Uhruh Act"), Cal. Civ. Code § 51(b), because Defendant's wheelchair lift deprived Plaintiff of "full and equal access and accommodations" to business establishments. *Id.* at ¶¶ 36–42.

Count Two alleges that Defendant's "failure to manufacture a reliable Go Go Elite Traveler Plus and a wheelchair lift that functions without difficulties" violates Plaintiff's rights under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, which constitutes a violation of the Unruh Act, Cal. Civ. Code § 51(f). *Id.* ¶ 45.

Count Three alleges that Defendant violated California Civil Code § 51.7(a), which provides the right to "be free from any violence, or intimidation by threat of violence, committed against their persons or property." *Id.* ¶¶ 48–51. Plaintiff states that "there is a likelihood [sic]

that Defendant deliberately manufactured" its wheelchair "to free wheel when vigorously pushed backwards" and that the wheelchair thus "caused violence to Plaintiff's person and property." *Id.* ¶ 51.

Count Four alleges that Defendant violated unspecified provisions of California and federal law and regulations "regarding the manufacture of wheelchairs." *Id.* ¶¶ 52–54.

Count Five alleges that Defendant violated unspecified provisions of California and federal law and regulations "regarding the manufacture of wheelchair lifts." *Id.* ¶¶ 55–57.

Count Six alleges that Defendant "manufactured a dangerous wheelchair" and that Defendant should be held strictly liable for the damages caused to Plaintiff. *Id.* ¶¶ 58–60. Plaintiff states that the wheelchair "failed to properly function, freewheeled down a hill, and caused injuries to Plaintiff." *Id.*

Count Seven alleges that Defendant "manufactured a difficult to use and dangerous wheelchair lift" and that Defendant should be held strictly liable. *Id.* ¶¶ 61–63.  Plaintiff alleges that the wheelchair lift "failed to properly function, causing difficulties and injuries to Plaintiff." *Id.*

On August 4, 2016, Defendant filed a notice of removal and removed the case to the U.S. District Court for the Northern District of California on the basis of diversity jurisdiction.  ECF No. 1.

On August 8, 2016, Defendant moved to dismiss the complaint for failure to state a claim. ECF No. 4.  Plaintiff opposed the motion on September 20, 2016, ECF No. 11, and Defendant replied on October 6, 2016, ECF No. 12.

**II. LEGAL STANDARD**

**A. Motion to Dismiss Under Rule 12(b)(6)**

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss an action for failure to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

United States District Court
Northern District of California

4

defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citation omitted).

For purposes of ruling on a Rule 12(b)(6) motion, the Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). However, a court need not accept as true allegations contradicted by judicially noticeable facts, *Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000), and a "court may look beyond the plaintiff's complaint to matters of public record" without converting the Rule 12(b)(6) motion into one for summary judgment, *Shaw v. Hahn*, 56 F.3d 1128, 1129 n.1 (9th Cir. 1995). Nor must the Court "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011). Mere "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004).

**B. Leave to Amend**

If the court concludes that a motion to dismiss should be granted, it must then decide whether to grant leave to amend. Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend "shall be freely given when justice so requires," bearing in mind "the underlying purpose of Rule 15 . . . [is] to facilitate decision on the merits, rather than on the pleadings or technicalities." *Lopez*, 203 F.3d at 1127 (citation omitted). Nonetheless, a district court may deny leave to amend a complaint due to "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." *See Leadsinger*, *Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008) (alteration in original).

**III. DISCUSSION**

**A. Failure to State a Claim for Violations of the Unruh Civil Rights Act**

Count One and Count Two of Plaintiff's complaint allege that Defendant violated

California's Unruh Act, Cal. Civil Code § 51 *et seq.*  Count One alleges a violation of the Unruh Act that is independent of an ADA violation.  Count Two alleges a violation of the Unruh Act that is premised on a violation of the ADA.

### 1. Count One: Unruh Act Violation Independent of the ADA

Section 51 of the Unruh Act provides that individuals within the state of California "are free and equal, and no matter what their . . . disability[ or] medical condition . . . are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever."  Cal. Civ. Code § 51(b).  In order to establish a disability discrimination claim under the Unruh Act that is independent of a violation of the ADA, "a plaintiff must establish that (1) she was denied the full and equal accommodations, advantages, facilities, privileges, or services in a business establishment; (2) her disability was a motivating factor for this denial; (3) defendants denied plaintiff the full and equal accommodations, advantages, facilities, privileges, or services; and (4) defendants' wrongful conduct caused plaintiff to suffer injury, damage, loss or harm."  *Phillips v. P.F. Chang's China Bistro, Inc.*, 2015 WL 4694049, at *6 (N.D. Cal. Aug. 6, 2015).  For the reasons discussed below, Plaintiff has not stated a claim for a violation of § 51(b) of the Unruh Act.

First, Plaintiff has failed to state a claim because Plaintiff was not denied "full and equal" services by Defendant.  *See id.*  According to Plaintiff's complaint, Plaintiff successfully purchased and received the goods that Defendant offers.  Compl. ¶¶ 2, 11, 22.  After purchasing the wheelchair and wheelchair lift, Plaintiff found these products to be unsatisfactory or defective.  *Id.* ¶¶ 15–21, 29.  However, Plaintiff's dissatisfaction with Defendant's products does not establish that Plaintiff accessed, purchased, or received Defendant's products on anything less than a "full and equal" basis.  *Phillips*, 2015 WL 4694049, at *4; *see also Koire v. Metro Car Wash*, 707 P.2d 195, 197 (Cal. 1985) (explaining that the California legislature, in enacting the Unruh Act, was concerned with businesses offering "equal treatment of patrons in all aspects of" the business).  Absent any indication that Plaintiff was denied "full and equal" services by Defendant, Plaintiff has failed to state a claim under § 51(b) of the Unruh Act.  *See* Cal. Civ. Code § 51(b).

United States District Court
Northern District of California

6

Case No.16-CV-04411-LHK
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

Second, under California law, "[i]ntentional discrimination is required for an independent violation of the Unruh Act," as opposed to a violation of the Unruh Act that is premised on a violation of the ADA. *Phillips*, 2015 WL 459449, at *6 (citing *Munson v. Del Taco, Inc.*, 208 P.3d 623, 625 (Cal. 2009)). "The California Supreme Court has concluded that the [Unruh] Act requires allegations of willful, affirmative misconduct, and that a plaintiff must allege more than the disparate impact of a facially neutral policy on a particular group." *Young v. Facebook, Inc.*, 790 F. Supp. 2d 1110, 1116 (N.D. Cal. 2011) (internal quotation marks omitted). Here, Plaintiff alleges that Defendant "fail[ed] to manufacture a wheelchair lift that functions without difficulty" and that these defects caused Plaintiff to be "unable to have full and equal accommodations." Compl. ¶¶ 38–39. Plaintiff does not allege that Defendant willfully manufactured a deficient wheelchair lift and that her "disability was a motivating factor" in Defendant's decision to intentionally manufacture a defective wheelchair lift. *See Phillips*, 2015 WL 4694049, at *6; *see also Young*, 790 F. Supp. 2d at 1116 (dismissing Unruh Act claim because Plaintiff did not allege that Defendant "treated her differently *because* of her disability" or that Defendant applied "policies in a way that *targets* individuals with disabilities.").

The Court accordingly holds that Plaintiff has not adequately alleged a claim for disability discrimination under California Civil Code § 51(b). However, because it is not evident that amendment is futile, the court will grant leave to amend for Plaintiff to address the above deficiencies. *See Lopez v. Smith* , 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc) ("A district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts."). Accordingly, the Court GRANTS with leave to amend Defendant's motion to dismiss Count One.

### 2. Count Two: Unruh Act Violation Premised on the ADA

Count Two of Plaintiff's complaint alleges that Defendant violated the Unruh Act, Cal. Civ. Code § 51(f), because Defendant violated the ADA. "Under the Unruh Act, any violation of the ADA is an automatic violation of the Unruh Act." *Kalani v. Starbucks Corp.*, 81 F. Supp. 3d 876, 892 (N.D. Cal. 2015) (citing Cal. Civ. Code § 51(f)). A Plaintiff alleging a violation of the

7

United States District Court
Northern District of California

1  Unruh Act that is premised on a violation of the ADA does not have to establish intentional

2  discrimination. *Phillips*, 2015 WL 4694049, at *7 ("A violation of the ADA constitutes a

3  violation of the Unruh Act and does not require a showing of intentional discrimination.").

4         Plaintiff's complaint does not specify which provision of the ADA Defendant allegedly

5  violated. The Court will assume that Plaintiff intends to allege that Defendant violated Title III of

6  the ADA, which "prohibits discrimination against the disabled in the full and equal enjoyment of

7  public accommodations, 42 U.S.C. § 12182(a), and public transportation services, § 12184(a)."

8  *Pilling v. Bay Area Rapid Transit*, 881 F. Supp. 2d 1152, 1162 (N.D. Cal. 2012). For the reasons

9  discussed below, Plaintiff has failed to state a claim under Title III of the ADA, and thus Plaintiff

10 has failed to state a claim under the Unruh Act premised on an ADA violation.

11        First, Plaintiff has failed to state a claim under the Unruh Act that is premised on

12 Defendant's violation of § 12182(a) of the ADA, which "prohibits discrimination . . . in the full

13 and equal enjoyment of public accommodations." *See id.* Section 12182(a) of the ADA states

14 that "[n]o individual shall be discriminated against on the basis of disability in the full and equal

15 enjoyment of goods, services, facilities, privileges, advantages, or accommodations of any place of

16 public accommodation by any person who owns, leases (or leases to), or operates a place of public

17 accommodation." 42 U.S.C. § 12182(a). In order to establish discrimination under the statute, a

18 plaintiff must show that: (1) [s]he is disabled within the meaning of the ADA; (2) the defendant is

19 a private entity that owns, leases, or operates a place of public accommodation; and (3) the

20 plaintiff was denied public accommodations by the defendant because of his disability." *Arizona*

21 *ex rel. Goddard v. Harkins Amusement Enters., Inc.*, 603 F.3d 666, 670 (9th Cir. 2010).

22        Plaintiff has not stated a claim for a violation of § 12182(a) because Defendant is not a

23 "place of public accommodation" for purposes of the ADA. 42 U.S.C. § 12182(a). "Title III

24 provides an extensive list of 'public accommodations' in § 12181(7)." *Weyer v. Twentieth*

25 *Century Fox Film Corp.*, 198 F.3d 1104, 1114 (9th Cir. 2000); *see* 42 U.S.C. § 12181(7) (listing

26 twelve categories of private establishments that are considered "public accommodation" if the

27 establishment affects interstate commerce, such as "sales or rental establishment[s]"). The Ninth

28 

8

Circuit has explained, however, that "public accommodations" for purposes of the statute are "actual, physical places where goods or services are open to the public, and places where the public gets those goods or services." *Id.* More specifically, the Ninth Circuit has held that "some connection between the good or service complained of and an actual physical place is required." *Id.*

Here, Plaintiff states that she purchased Defendant's wheelchair and wheelchair lift, and that Plaintiff has difficulty traveling because these items "function[] with[] difficulties." *See, e.g.*, Compl. ¶¶ 2, 11, 35. There is no "connection," however, between the good that Plaintiff received from Defendant "and an actual physical place" that is owned or leased by Defendant that Plaintiff cannot access because of her disability. *See Weyer*, 198 F.3d at 1114; *see also Young*, 790 F. Supp. 2d at 1116 (finding that Facebook was not a "place of public accommodation" because Facebook's allegedly discriminatory internet services did "not have a nexus to a physical place of public accommodation for which Facebook may be liable under the statute," such as a store that Facebook itself "owns, leases . . . or operates"). Indeed, Plaintiff's complaint contains no facts to suggest that Defendant "owns, leases . . . or operates" an "actual physical" location at all. Thus, because Defendant is not a "public accommodation" within the meaning of the ADA, *see Weyer*, 198 F.3d at 1114, Plaintiff has failed to allege that Defendant is liable under § 12182(a).

Moreover, even on the assumption that Defendant is a place of "public accommodation" under the statute, Plaintiff's complaint still fails to state a claim for relief. The ADA "prohibits discrimination in the enjoyment of the goods [and] services" provided by places of public accommodation. *Id.* at 1115 (internal quotation marks omitted). The Ninth Circuit has explained that "[t]he ordinary meaning of this language is that *whatever goods or services the place provides*, it cannot discriminate on the basis of disability in providing enjoyment of those goods and services." *Id.* (emphasis added). The ADA thus "does not require provision of different goods or services, just nondiscriminatory enjoyment of those that are provided." *Id.* Again, Plaintiff states that she purchased the wheelchair and wheelchair lift that were manufactured by Defendant, but that Plaintiff found that these products functioned with difficulties. *See, e.g.*,

Case No.16-CV-04411-LHK
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

United States District Court
Northern District of California

1   Compl. ¶ 45.  The facts alleged in Plaintiff's complaint thus show that Plaintiff received "whatever

2   goods or services [Defendant] provides."  *Weyer*, 198 F.3d at 1115.  Plaintiff's complaint contains

3   no facts to suggest that Defendant "discriminate[d] on the basis of disability in providing

4   enjoyment of those goods and services" to Plaintiff.  *Id.*  Thus, even assuming that Defendant is a

5   place of "public accommodation," Plaintiff has failed to state a claim for discrimination under

6   §12182 of the ADA.

7       Second, Plaintiff has failed to state a claim that Defendant violated § 12184(a) of the ADA.

8   Section 12184(a) of the ADA "prohibits discrimination by a private entity that provides 'specified

9   public transportation services,' is 'primarily engaged in the business of transporting people,' and

10  whose operations affect commerce."  *Pilling*, 881 F. Supp. 2d at 1162.  Plaintiff asserts in its

11  opposition to Defendant's motion to dismiss that Defendant is a "[p]rivate entit[y] that [is]

12  primarily engaged in the business of transporting people" and thus, under the ADA, Defendant

13  may "not discriminate against any individual on the basis of disability in the full and equal

14  enjoyment of specified transportation services."  Pl. Op. at 6.

15      Plaintiff's reliance on § 12184(a) is not persuasive.  According to Plaintiff's complaint,

16  Defendant *manufactures and sells* wheelchairs and wheelchair lifts.  *See* Compl. ¶¶ 2, 11.

17  However, under the statute, a "specified public transportation service" is the "transportation by

18  bus, rail, or any other conveyance (other than aircraft) provided by a private entity to the general

19  public, with general or special service (including charter service) on a regular and continuing

20  basis."  *Pilling*, 881 F. Supp. 2d at 1162 (quoting 49 C.F.R. § 37.3).  "[O]ther conveyance[s]" that

21  fall within the statutory definition are services such as cruise ships, which "are used almost

22  exclusively for transporting passengers," "operate according to set schedules," and offer

23  transportation services "on a regular and continuing basis."  *See Deck v. Am. Hawaii Cruises, Inc.*,

24  1999 WL 92210, at *4 (D. Haw. 1999).  Defendant does not fall within the meaning of the statute.

25  By manufacturing and selling wheelchairs and wheelchair lifts, Defendant does not itself transport

26  passengers, let alone offer conveyance "to the general public, with general or special service . . .

27  on a regular or continuing basis."  *Pilling*, 881 F. Supp. 2d at 1162.  Accordingly, because

28

United States District Court
Northern District of California

10

Case No.16-CV-04411-LHK
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

1    Defendants are not a provider of "specified public transportation services," Plaintiff has failed to

2    allege that Defendants are liable under § 12184(a) of the ADA.  *See* § 12184(a).

3          Moreover, as discussed above, even on the assumption that Defendant offers

4    "transportation services" or transports people, Plaintiff has not alleged that she received less than

5    "full and equal enjoyment of" the services offered by Defendant.  *Id.*  Again, Plaintiff purchased

6    Defendant's wheelchair and wheelchair lift, and Plaintiff found the products to be defective and

7    unreliable.  *See* Compl. ¶¶ 2, 11.  Thus, even assuming that Defendant provides transportation

8    services, Plaintiff has failed to allege that Defendant violated § 12184(a) by discriminating against

9    her on the basis of her disability in its provision of services.

10          In sum, Plaintiff has failed to state a claim for a violation of the ADA, and Plaintiff has

11   thus accordingly failed to state a claim for a violation of § 51(f) of the Unruh Act.  However,

12   because leave to amend is not necessarily futile, the Court will grant leave to amend in order to

13   allow Plaintiff the opportunity to correct the above deficiencies.  *See Lopez*, 203 F.3d at 1130 ("A

14   district court should grant leave to amend even if no request to amend the pleading was made,

15   unless it determines that the pleading could not possibly be cured by the allegation of other facts."

16   (internal quotation marks omitted)).  The Court accordingly GRANTS with leave to amend

17   Defendant's motion to dismiss Count Two.

18          **B. Failure to State a Claim for Violation of California Civil Code 51.7**

19          Count Three of Plaintiff's complaint states that Defendant violated California Civil Code §

20   51.7,[1] which provides that all individuals within the state of California "have the right to be free

21   from any violence, or intimidation by threat of violence, committed against their persons or

22   property because of" a protected characteristic, including disability.  Cal. Civ. Code § 51.7; *see*

23   *also* Cal. Civ. Code § 51(b),(e) (setting forth protected characteristics).  In order to allege a

24   violation of this statute, Plaintiff must establish (1) "Defendant[] committed or threatened violent

25   

─────────────────────

26   [1] Plaintiff's complaint describes this claim as an Unruh Act claim.  However, § 51.7 "is not part of
     the Unruh Act."  *Ramirez v. Wong*, 116 Cal. Rptr. 3d 412, 416 (Cal. Ct. App. 2010).  Section 51.7
27   merely incorporates the Unruh Act's definitions of what constitutes a protected characteristic—
     such as race, gender, or disability—for purposes of protection from violence under § 51.7.  *Id.*

28   
     Case No.16-CV-04411-LHK
     ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

1   acts against Plaintiff[]"; (2) Defendant was motivated by its perception of Plaintiff's disability; (3)

2   Plaintiff was harmed; and (4) Defendant's "conduct was a substantial factor in causing Plaintiff['s]

3   harm." *Campbell v. Feld Entm't, Inc.*, 75 F. Supp. 3d 1193, 1205 (N.D. Cal. 2014).

4         Plaintiff has not alleged a violation of § 51.7.  Section 51.7 is "a 'hate crimes' statute," and

5   accordingly "requires violence or a threat of violence." *Ramirez v. Wong*, 116 Cal. Rptr. 3d 412,

6   417 (Cal. Ct. App. 2010).  Specifically, it requires violence or a threat of violence that is *motivated*

7   *by Plaintiff's disability.  See Boarman v. Cnty. of Sacramento*, 2013 WL 3894167, at *2 (E.D. Cal.

8   July 26, 2013) ("To adequately plead a claim under section 51.7, plaintiff must allege facts to

9   support a reasonable inference that the plaintiff's [protected characteristic] was a motivating

10  factor." (internal quotations and citation omitted)).

11        Here, Plaintiff alleges that Defendant manufactured a wheelchair that is designed to free

12  wheel backwards when pushed.  Compl. ¶ 50.  Although Defendant may have manufactured a bad

13  product, and the functioning of this product may have ultimately caused Plaintiff harm, this does

14  not state a claim for relief under § 51.7.  In order to state a claim, Plaintiff must allege facts that

15  establish that Defendant, *motivated by a desire to harm Plaintiff* on the basis of her disability,

16  manufactured the wheelchair with the *intent* of causing Plaintiff harm.  *See Boarman*, 2013 WL

17  3894167, at *2.  The facts alleged in Plaintiff's complaint fall short of such a showing.

18        Accordingly, because Plaintiff has failed to allege facts showing intentional conduct on

19  behalf of the Defendant or conduct that is motivated by Plaintiff's disability, the Court finds that

20  Plaintiff has failed to state a claim under California Civil Code § 51.7.  Although it is unlikely that

21  Plaintiff can allege facts sufficient to state a claim for relief under this statute, the Court will grant

22  leave to amend because amendment is not necessarily futile.  *See Lopez*, 203 F.3d at 1130  ("A

23  district court should grant leave to amend even if no request to amend the pleading was made,

24  unless it determines that the pleading could not possibly be cured by the allegation of other

25  facts.").  The Court accordingly GRANTS with leave to amend Defendant's motion to dismiss

26  Count Three.

27        **C. Failure to State a Claim for Violations of Federal and State Manufacturing Laws**

28
Case No.16-CV-04411-LHK
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

United States District Court
Northern District of California

1    Counts Four and Five of Plaintiff's complaint allege that Defendant "violated California

2    and Federal laws and regulations regarding the manufacture of wheelchairs" and wheelchair lifts.

3    Compl. ¶¶ 54 (wheelchair) & 56 (wheelchair lift).   Plaintiff's complaint does not state which

4    federal and state laws Defendant allegedly violated.

5    Defendant asserts in its motion to dismiss that the Federal Food and Drug Administration

6    ("FDA") is responsible for the regulation of "the manufacture and distribution of powered

7    wheelchairs[] and wheelchair accessories" and that, pursuant to the Food Drug and Cosmetic Act

8    ("FDCA"), 21 U.S.C. § 360j(f)(1)(A), the FDA has enforcement authority for violations of

9    relevant federal regulations regarding the manufacture and distribution of wheelchairs and

10   wheelchair accessories.  Def. Mot. at 7.  The FDCA, Defendant asserts, does not permit private

11   litigants to bring claims alleging violations of the FDCA.  *Id.* at 8.  Moreover, with regards to

12   Plaintiff's claims that Defendant violated state manufacturing laws, Defendant asserts that

13   California regulates medical devices through the Sherman Food, Drug, and Cosmetic Law

14   ("Sherman Law"), Cal. Health & Safety Code § 109920, and that this law similarly does not

15   provide a private cause of action for private litigants.  Def. Mot. at 9.

16   Assuming that Plaintiff is seeking in Counts Four and Five to bring causes of action under

17   the FDCA for Defendant's violations of the FDCA's manufacturing requirements, Plaintiff has

18   failed to state a claim.  "Section 337(a) of the FDCA bars private enforcement of the statute,

19   stating that 'all such proceedings for the enforcement, or to restrain violations, of this [Act] shall

20   be by and in the name of the United States."  *PhotoMedex, Inc. v. Irwin*, 601 F.3d 919, 924 (9th

21   Cir. 2010) (quoting 21 U.S.C. § 3337(a)).  "[I]t is the Federal Government rather than private

22   litigants who are authorized to file suit for noncompliance with the medical device provisions."  *Id.*

23   (quoting *Buckman Co. v. Plaintiffs' Legal Comm.* 531 U.S. 341, 349 n.4 (2001)).

24   Similarly, to the extent that Plaintiff seeks in Counts Four and Five to bring causes of

25   action under the Sherman Law for Defendant's alleged violation of the Sherman Law's

26   manufacturing requirements, Plaintiff has failed to state a claim.  "[T]here is no private right of

27   action under the Sherman Law."  *Thomas v. Costco Wholesale Corp.*, 2015 WL 4776298, at *7

28
Case No.16-CV-04411-LHK
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

1    (N.D. Cal. Aug. 13, 2015).

2         Plaintiff's opposition to Defendant's motion to dismiss asserts that she "is not requesting

3    any private enforcement of FDA regulations" or the Sherman Act, but rather that she is seeking a

4    damages remedy for tort claims premised on a violation of state and federal regulations.  Pl. Op. at

5    6–8.  However, to the extent that Plaintiff seeks to assert causes of action for strict product

6    liability under California law, these causes of action are already alleged in Counts Six and Seven

7    of the complaint, as discussed below.  To the extent that Plaintiff seeks to assert a cause of action

8    under a separate theory of state tort law, Plaintiff has failed to state a claim.

9         Accordingly, the Court GRANTS Defendant's motion to dismiss Counts Four and Five.

10   Leave to amend will be granted to the extent that Plaintiff seeks to allege a state tort cause of

11   action that is separate from Plaintiff's claims for strict products liability.  However, for the reasons

12   discussed above, leave to amend will not be granted for Plaintiff to reallege causes of action under

13   the FDCA or the Sherman Act.  *See Leadsinger*, 512 F.3d at 532.

14        **D. Failure to State a Claim for Strict Products Liability**

15        Lastly, Counts Six and Seven of Plaintiff's complaint allege that Defendant should be

16   strictly liable for Plaintiff's damages sustained as a result of Defendant's deficient manufacturing

17   of the wheelchair and wheelchair lift.

18        **1. Count Six: Strict Product Liability for the Wheelchair**

19        First, Count Six alleges that Defendant "manufactured a dangerous wheelchair" and that

20   Defendant should be held strictly liable.  Compl. ¶¶ 58–60.  Under California law, "[a]

21   manufacturer is strictly liable in tort when an article he places on the market, knowing that it is to

22   be used without inspection for defects, proves to have a defect that causes injury to a human

23   being." *Anderson v. Owens-Corning Fiberglas Corp.*, 53 Cal. 3d 987, 994 (Cal. 1991) (internal

24   quotation marks omitted).  California recognizes strict liability "for three types of defects—

25   manufacturing defects, design defects, and 'warning defects.'" *Id.* at 995.

26        It is unclear from Plaintiff's complaint and Plaintiff's opposition to Defendant's motion to

27   dismiss whether Plaintiff intends to assert in Count Six a manufacturing-defect theory, a design-

28
14

United States District Court
Northern District of California

1    defect theory, or both. Under either theory, however, Plaintiff fails to state a claim for strict

2    product liability under California law.

3                              **a. Manufacturing Defect**

4         First, Plaintiff fails to adequately allege a manufacturing defect. "A product with a

5    manufacturing defect 'is one that differs from the manufacturer's intended result or from other

6    ostensibly identical units of the same product line.'" *Dunson v. Cordis Corp.*, 2016 WL 3913666,

7    at *6 (N.D. Cal. July 20, 2016) (quoting *Barker v. Lull Eng'g Co.*, 20 Cal. 3d 413, 430 (Cal.

8    1978)). In order to allege a strict products liability claim under a manufacturing-defect theory, a

9    plaintiff "must *identify/explain how* the [product] either deviated from [the company's] intended

10   result/design or *how* the [product] deviated from other seemingly identical" models of the product.

11   *Lucas v. City of Visalia*, 726 F. Supp. 2d 1149, 1155 (E.D. Cal. 2010).

12        Here, Plaintiff states that the wheelchair started "freewheeling down [a] hill" after Plaintiff

13   placed the wheelchair in reverse on a hill and that the wheelchair "was either defective or . . .

14   deliberately designed to" freewheel in such a manner. Compl. ¶¶ 28–29. The complaint does not

15   state how the wheelchair that Plaintiff purchased is different from the design of the wheelchair that

16   Defendant intended or from other identical models of the wheelchair. *Dunson*, 2016 WL 391366,

17   at *6; *see also In re Toyota Motor Corp.*, 754 F. Supp. 2d 1208, 1221 (C.D. Cal. 2010) (finding

18   that Plaintiff failed to state a strict product liability claim under a manufacturing-defect theory

19   because the complaint failed to allege "how the vehicle deviated from Toyota's intended design or

20   other product models."). Rather, "Plaintiff[] make[s] only conclusory allegations" that the product

21   is defective, which is insufficient to allege a manufacturing defect claim. *Trabakoolas v. Watts*

22   *Water Techs., Inc.*, 2012 WL 2792441, at *4 (N.D. Cal. July 9, 2012). Plaintiff has thus failed to

23   state a claim that the wheelchair was defectively manufactured.

24                              **b. Design Defect**

25        Plaintiff also fails to state a claim in Count Six for strict product liability under a design-

26   defect theory. "A design defect is present when a product 'fail[s] to perform as safely as an

27   ordinary consumer would expect when used as intended or reasonably foreseeable, or if, on

28
                                           15

United States District Court
Northern District of California

United States District Court
Northern District of California

1   balance, the risk of danger inherent in the challenged design outweighs the benefits of the

2   design.'" *Trabakoolas*, 2012 WL 2792441, at *3 (quoting *Brown v. Superior Court*, 44 Cal. 3d

3   1049, 1057 (Cal. 1988)).  Thus, under a design-defect theory, a design may be "defective in one of

4   two ways." *Lucas*, 726 F. Supp. 2d at 1154 (citing *Soule v. Gen. Motors Corp.*, 8 Cal. 4th 548,

5   566–67 (Cal. 1994)).  First, a products design is defective under the "consumer expectations test"

6   if the product "has failed to perform as safely as ordinary consumers would expect when used in

7   an intended or reasonably foreseeable manner." *Id.*  Second, a products design is defective under

8   the "risk-benefit test" if the product's "design embodies 'excessive preventable danger,' that is,

9   the risk of danger inherent in the design outweighs the benefits of such design." *Id.*  A plaintiff

10  stating a claim for a design defect "should identify which design defect theory is being utilized."

11  *In re Toyota*, 754 F. Supp. 2d at 1220.

12          Count Six of Plaintiff's complaint does not "identify" whether Plaintiff intends to proceed

13  under the consumer-expectations test or the risk-utility test.  *See id.*  As discussed above, Plaintiff

14  states that the wheelchair "was either defective or . . . deliberately designed to freewheel when

15  pushed vigorously backwards."  Compl. ¶ 29.  Plaintiff alleges that although "such a design might

16  be useful in a nursing home, it should not have been installed in a wheelchair called Go Go Elite

17  Traveler Plus." *Id.*  This does not identify which theory of design defect Plaintiff intends to assert.

18          Moreover, in addition to identifying the test that Plaintiff intends to use, Plaintiff's

19  complaint must "allege facts to support" the test that Plaintiff identifies in order to adequately state

20  a claim for strict products liability. *In re Toyota*, 754 F. Supp. 2d at 1220.  Under either a

21  manufacturing-defect theory or a design-defect theory, Count Six of the complaint fails to allege

22  supporting facts.  Specifically, if Plaintiff seeks to assert a claim under the consumer-expectation

23  test, her complaint "should describe how [the product] failed to meet the minimum safety

24  expectations of an ordinary consumer." *Altman v. HO Sports Co., Inc.*, 2009 WL 4163512, at *8

25  (E.D. Cal. Nov. 23, 2009).  Here, Plaintiff's complaint is devoid of any allegations regarding the

26  "minimum safety expectations" that an ordinary consumer of a wheelchair would have, *see id.*, in

27  ascending or reversing a wheelchair on a hill.

28
Case No.16-CV-04411-LHK
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

Moreover, if Plaintiff seeks to assert a claim under the risk-benefit theory, her complaint "should allege that the risks of the design outweigh the benefits and then explain how the particular design" of the product caused Plaintiff harm. *Lucas*, 726 F. Supp.2d at 1155 (internal quotation marks omitted). Plaintiff's complaint does not contain these allegations. Rather, Plaintiff alleges only that the "free wheel" design of the wheelchair "might be useful in a nursing home" but that such a design "should not have been installed in a wheelchair called Go Go Elite Traveler Plus." Compl. at ¶ 29. Plaintiff does not allege any facts regarding the relative risks or benefits of the wheelchair's design.

Accordingly, Plaintiff has failed to state a claim in Count Six for strict product liability under either a manufacturing-defect theory or a design-defect theory. However, the Court finds that amendment of this claim would not necessarily be futile. Accordingly, the Court GRANTS with leave to amend Defendant's motion to dismiss Counts Six.

### 2. Count Seven: Strict Product Liability for the Wheelchair Lift

Count Seven of Plaintiff's complaint alleges that the Defendant is strictly liable with regards to the wheelchair lift. This claim suffers from the same deficiencies identified above with regards to Count Six.

Plaintiff alleges that she cannot reach the control for the lift when seated in her wheelchair; that the lift tilts when Plaintiff sits on the lift in her wheelchair; that the tie breaks; that the lift squeaks badly; and that the lift "jacks the van upwards" if "not turned off at the exactly correct position." Compl. ¶¶ 14–21. As discussed above, it is not clear from Plaintiff's complaint whether Plaintiff intends to assert a design defect or a manufacturing defect with regards to the wheelchair lift. Under either theory, however, Plaintiff's complaint fails to state a claim.

First, if Plaintiff intends to assert a claim for a manufacturing defect in Count Seven, Plaintiff has failed to allege how the wheelchair lift "differed from defendants' intended design" for the lift. *Dunson*, 2016 WL 391366, at *6. Accordingly, Plaintiff has not adequately alleged a manufacturing defect.

Second, if Plaintiff intends to assert a claim for defective design in Count Seven, Plaintiff

United States District Court
Northern District of California

17

Case No.16-CV-04411-LHK
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

1   has also failed to state a claim.  Again, Plaintiff's complaint fails to identify which design-defect

2   theory she wishes to utilize.  *See Toyota*, 754 F. Supp. 2d at 1220.  If Plaintiff intends to assert a

3   claim pursuant to the consumer-expectations test, Plaintiff has not described how the lift "failed to

4   meet the minimum safety expectations of an ordinary consumer."  *Altman*, 2009 WL 4163512, at

5   *8.  Indeed, many of Plaintiff's allegations refer to frustrations that are unrelated to safety

6   concerns.  *See* Compl. ¶¶ 14–21.  Similarly, if Plaintiff seeks to assert a claim pursuant to a risk-

7   benefit theory, Plaintiff's complaint does not allege how the lift's design presents "excessive

8   preventable danger."  *Lucas*, 726 F. Supp. 2d at 1154.

9         Count Seven suffers from an additional deficiency.  Under California law, "recovery under

10   the doctrine of strict liability is limited solely to 'physical harm to person or property.' "  *Jimenez v.*

11   *Superior Court*, 29 Cal. 4th 473, 482 (Cal. 2002) (internal quotation marks omitted).  "Damages

12   available under strict products liability do not include economic loss, which includes damages for

13   inadequate value, costs of repair and replacement of the defective product or consequent loss of

14   profits—without any claim of personal injury or damages to other property."  *Id.* (internal

15   quotation marks omitted).  Plaintiff's complaint refers in conclusory terms to "difficulties and

16   injuries the Plaintiff sustained from the difficult to use and badly designed internal platform."

17   Compl. ¶ 63.  Plaintiff's complaint, however, does not allege that she incurred any physical

18   injuries or damages to other property from the deficient wheelchair lift.  The economic loss

19   doctrine accordingly bars Plaintiff's recovery under Count Seven.

20         Thus, Count Seven of Plaintiff's complaint fails to state a claim for relief.  However, the

21   Court finds that amendment of Count Seven would not necessarily be futile.  Accordingly, the

22   Court GRANTS with leave to amend Defendant's motion to dismiss Count Seven.

23   **IV. CONCLUSION**

24         For the foregoing reasons, the Court rules as follows:

25         • The Court GRANTS with leave to amend Defendants' motion to dismiss Counts

26           One, Two, Three, Six, and Seven.

27         • The Court GRANTS Defendant's motion to dismiss Counts Four and Five.  To the

28

United States District Court
Northern District of California

18

1   extent that Plaintiff seeks to assert a state tort cause of action that differs from

2   Plaintiff's causes of action for strict products liability, the Court grants leave to

3   amend.  The Court GRANTS with prejudice Defendant's motion to dismiss counts

4   Four and Five to the extent they assert claims under the Food Drug and Cosmetic

5   Act and the Sherman Food, Drug, and Cosmetic Law.

6         Should Plaintiff elect to file an amended complaint curing the deficiencies identified

7   herein, Plaintiff shall do so within thirty (30) days of this Order.  Failure to meet the thirty-day

8   deadline to file an amended complaint or failure to cure the deficiencies identified in this Order

9   will result in dismissal with prejudice of Plaintiff's claims.  Plaintiff may not add new causes of

10   action or parties without leave of the Court or stipulation of the parties pursuant to Rule 15 of the

11   Federal Rules of Civil Procedure.

12   **IT IS SO ORDERED.**

13

14   Dated: October 28, 2016

15   _____

16   LUCY H. KOH
    United States District Judge

17

18

19

20

21

22

23

24

25

26

27

28

Case No.16-CV-04411-LHK
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

*United States District Court*
*Northern District of California*